[Civ. No. 5256.   Third Appellate District.—December 18, 1934.]

STUART F. COOPER, Appellant, v. MILTON G. COOPER, Defendant and Respondent; HATTIE MAY COOPER, Intervener and Respondent.

[Civ. No. 5257.   Third Appellate District.—December 18, 1934.]

HATTIE MAY COOPER, Plaintiff and Respondent, v. STUART F. COOPER, Appellant; MILTON G. COOPER et al., Defendants and Respondents.

Zach Lamar Cobb and Earl A. Littlejohns for Appellant.

Barker & Keithly and Dunne & Dunne for Respondents.

THOMPSON, J.—The above-entitled cases were consolidated for the purpose of trial. Separate findings and judgments were rendered in each case. Separate appeals were perfected from the respective judgments. They were brought to this court and presented on a single transcript of evidence. The determination of the main issues of both cases depends on the same evidence. ·

The plaintiff Stuart F. Cooper has appealed from a judgment in the first case which was rendered against him in a suit on a promissory note. The court found that the alleged note was given without consideration and that it is therefore void, and directed that it be canceled.

The defendant and the intervener are husband and wife. The plaintiff is their son. All of the corporation stock and money which are involved in this suit were the community property of the defendant and his wife. Since 1895 the parties to this action have been residents of Los Angeles. Until October 1, 1926, the defendant Milton G. Cooper maintained an incorporated mercantile business in Los Angeles under the name of Milton G. Cooper Dry Goods Company, having 20,000 shares of capital stock of the par value of $100 per share. Milton G. Cooper was the president of the corporation. On the date last mentioned the capital stock of the corporation was reduced to 12,000 shares of the par value of $100 per share. The defendant owned 65 per cent of the stock of this corporation. October 22, 1919, he gave to his son 150 shares of his stock, and on December 26, 1922, made him a present of 100 other shares. About the time of the

original gift of stock to the son, he was taken into the business, and later became an officer therein.

This cause was tried by the court sitting without a jury. The court found that prior to November 20, 1924, the defendant Milton G. Cooper purchased a large number of shares of stock from other stockholders, for which he became obligated to pay the sum of $400,000; that he is still indebted for a considerable portion of that purchase price of the stock; that, on the last-mentioned date, the defendant transferred to the plaintiff 250 shares of his stock with the oral agreement that this stock together with all dividends subsequently paid thereon were to be held by his son in trust until the defendant's indebtedness was fully paid, and until, in the opinion of the defendant, his financial standing warranted him in requesting the plaintiff to reconvey the last-mentioned stock and accrued dividends to him; that by the terms of the oral trust agreement the defendant was authorized to use all such stock and accrued dividends as collateral security for any debts or obligations of the defendant; that pursuant to the same trust agreement the defendant on December 3, 1925, transferred to the plaintiff 250 additional shares of stock, and on the last-mentioned date there were issued and delivered to the plaintiff under that trust agreement 1666 other shares of stock as dividends on the stock held by the plaintiff; that subsequently 1600 shares of this dividend stock were transferred to the defendant Milton G. Cooper, and pledged by him to the Pacific Finance Company to secure a debt which he then owed that company; that these 1600 shares of dividend stock were redeemed by the defendant and reconveyed to the plaintiff subject to the same trust agreement, on December 30, 1927; that at the time of the reduction of the capital stock of the mercantile company, September 21, 1927, the plaintiff surrendered 1,000 shares of the stock which stood in his name, leaving only approximately 1500 shares in his name, all of which were subject to the trust agreement, except 250 shares thereof which belonged to him; that at the time of the reduction of the capital stock cash dividends on the shares owned and held in trust by the plaintiff were declared and paid to him as partial liquidation, in the sum of $62,500; that $20,833.33 of this sum belonged to the plaintiff, and the balance belonged to the trust fund in his hands; that

immediately thereafter, and on December 31, 1927, the defendant executed and delivered to the plaintiff the promissory note for $37,962.89, which is the subject of this suit, solely as a memorandum of the liquidating transaction, and not otherwise; that this note was signed by the defendant without consideration and is void, and that the defendant was not then indebted to the plaintiff, and never has been indebted to him in that sum or in any sum whatever. Thereupon the court rendered judgment against the plaintiff canceling the promissory note and directing that he take nothing by this suit. From this judgment the plaintiff has appealed.

The appellant contends that the court erred in admitting evidence of an oral declaration of trust in conflict with the terms of the promissory note; that the court erred in permitting the defendant to file an amendment to his answer to conform to the proof at the trial, and that the judgment is not supported by the evidence.

Oral evidence was competent in this case to prove that the alleged promissory note, for the payment of which this action was instituted, was not executed or delivered as an evidence of indebtedness to the payee thereof, but that it was signed and delivered only as a memorandum and receipt of the sum of money appearing therein which was paid by the plaintiff to the defendant at the time of the reduction of the capital stock of the corporation and the partial liquidation thereof. This oral evidence does not vary the terms of the promissory note, but tends to indicate that it was not intended by the parties thereto to become a promissory note, and on the contrary that it was signed and delivered as a mere receipt for money paid to the defendant pursuant to the terms of a verbal declaration of trust with respect to the capital stock and the dividends therefrom which were held by the plaintiff.

Oral evidence is competent to prove that a purported promissory note or written contract was executed as a mere artifice affecting the relationship or conduct of the parties thereto, and that it was not the intention of the parties that it should become binding upon them. Under such circumstances the reception of oral evidence does not have the effect of varying the terms of the written instrument, but rather tends to prove the invalidity of the challenged document. (*P. A. Smith Co.* v. *Muller*, 201 Cal. 219 [256 Pac.

411, 412]; *Texas Co.* v. *Berry Garage,* 121 Cal. App. 455 [9 Pac. (2d) 241]; *Gleeson* v. *Dunn,* 113 Cal. App. 347 [298 Pac. 119]; *Allen's Collection Agency* v. *Lee,* 73 Cal. App. 68 [238 Pac. 169]; sec. 3097, Civ. Code.) In the Smith case, *supra,* it is said in that regard: "Evidence that parties never intended a writing to constitute a contract, but that in lieu thereof another contract was entered into between them, is not objectionable under the parol evidence rule. Such evidence does not change a written contract by parol, but serves to establish that such contract had no force, efficacy, or effect."

█ The oral evidence was competent on another theory of defense. The answer of the defendant affirmatively alleged the note was executed without consideration except for a small proportion of the amount thereof which had been fully paid. It has been frequently held that oral evidence is always competent to show want of consideration, or even partial lack of consideration, for an instrument. This rule is invoked for the reason that such evidence does not result in varying the terms of the written instrument, but really amounts to an impeachment of the character of the document. (*Richardson* v. *Lamp,* 209 Cal. 668 [290 Pac. 14, 15]; *Wurdeman* v. *Waller,* 88 Cal. App. 393 [263 Pac. 558]; sec. 1962, subd. 2, Code Civ. Proc.; Brannan's Neg. Instr. Law, 4th ed., p. 254, sec. 28.) In the Richardson case, *supra,* it is said in that regard: "While the truth of the facts recited in a written instrument is conclusively presumed between the parties thereto, or their successors in interest by a subsequent title, this rule does not apply to the recital of a consideration. . . . The true consideration or the want of consideration may always be shown by extrinsic evidence for the purpose of impeaching a contract, notwithstanding that it states facts to show a valuable consideration."

And with respect to a partial failure of consideration, the text referred to in Brannan's Negotiable Instruments Law, *supra,* says: "Absence or failure of consideration is matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense *pro tanto,* whether the failure is an ascertained and liquidated amount or otherwise."

■ ▪ The court did not err in permitting the defendant to file an amendment to his answer to conform to the proof adduced at the trial. This amendment merely set up in greater detail and more specifically than the allegations of the answer did the alleged invalidity of the promissory note. But the oral evidence which was received at the trial was competent under the original answer with respect to both the issues of the invalidity of the note and as to the lack of consideration therefor, independently of the challenged amendment to the answer. The original answer did allege circumstances from which it may be reasonably assumed the stock and dividends and money involved in the note in question were all held by the plaintiff in trust, from which it follows that the defendant was not indebted to the plaintiff and that the note was therefore invalid for lack of consideration.

■ It is asserted the amendment is inconsistent with the original defense alleged in the answer. We are of the opinion the amendment to the answer was unnecessary, since the original answer alleged facts sufficient to support the findings and judgment of the court. But even though it be deemed to be inconsistent with the original answer, the defendant was entitled to allege as many different defenses as he possessed. (Sec. 441, Code Civ. Proc.; 21 Cal. Jur.; p. 134, sec. 90.) Since the oral evidence was competent under the issue of want of consideration, even though the asserted invalidity of the note was not otherwise adequately alleged, it was proper to permit the defendant to amend his answer to conform to the proof adduced at the trial. (*Burrow* v. *Carley*, 210 Cal. 95 [290 Pac. 577].)

■ While there is an irreconcilable conflict of testimony, we are of the opinion the findings and judgment are adequately supported by the evidence. It is claimed the acts and conduct of the defendant, together with certain written documents which were introduced in evidence, refute the theory of the existence of an oral declaration of trust with respect to the corporation stock and dividends therefrom which were held by the plaintiff in his name for the benefit of the defendant.

It was not necessary that the term "trust" should have been employed in the creating of a relationship between father and son which may be deemed to constitute an oral

declaration of trust. (*Logan* v. *Ryan*, 68 Cal. App. 448, 456 [229 Pac. 993].) In the case last cited the court quotes with approval from the case of *Cahlan* v. *Bank of Lassen County*, 11 Cal. App. 533 [105 Pac. 765], as follows: "Any words which indicate with sufficient certainty an intention or purpose to create a trust will be effective in so doing, without the use of the words trust or trustee."

Section 2221 of the Civil Code provides in part:

"A voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty:

"1. An intention on the part of the trustor to create a trust, and

"2. The subject, purpose and beneficiary of the trust."

■ Nor was it necessary for the plaintiff to have specifically or orally accepted the terms of the trust. Any acts or conduct on the part of the trustee which indicates with reasonable certainty that he understands and accepts the terms thereof are sufficient to create the trust. (Sec. 2222, Civ. ·Code; *Drinkhouse* v. *German Savings & Loan Soc.*, 17 Cal. App. 162 [118 Pac. 953]; *American Bible Soc.* v. *Mortgage Guarantee Co.*, 217 Cal. 9 [17 Pac. (2d) 105]; *Becker* v. *Schwerdtle*, 141 Cal. 386 [74 Pac. 1029].) The fact that the plaintiff specifically denied the existence of the trust in the course of his testimony at the trial merely creates a conflict of evidence and raises a question which was solely within the province of the trial judge to determine. Owing to the conflict of evidence regarding that subject, this court may not interfere with the decision of the trial judge in that regard. (2 Cal. Jur., p. 921, sec. 543.) The record is replete with positive statements repeatedly made by the defendant to the effect that the 500 shares of stock which were delivered to the plaintiff on November 20, 1924, and on December 3, 1925, together with the dividend shares and cash dividends thereon, were to be held by the plaintiff as trustee for the benefit of the defendant. The defendant testified in that regard that he transferred to his son the 500 shares of stock which stood in his own name, to be held in trust by his son, together with the proceeds therefrom, until the father was free from debt. The defendant said with respect to the first transaction: "At the time of transfer when I handed him the stock . . .

in the store, . . . I told Stuart I was transferring these 250 shares to him; that as long as I was in debt for the stock that I had bought out from my former partners, that any proceeds of those shares at that time would come to me until I was out of debt and in a position to know whether I could financially let him have all those shares and their returns thereafter. Q. Did your son tell you that he would not accept such transfer on those terms? A. No, he did not. . . . Q. Did you hand it (the stock) to him at the time of this conversation? A. Yes sir. Q. And he accepted it? A. Yes sir." The defendant testified further that he was still in debt for the shares which he had purchased from his former partners; that there was no consideration for a gift of the stock to his son, and that he positively told him the shares of stock and the proceeds therefrom were to remain his property until he was out of debt. The inference was that he might then give them to his son. He subsequently testified to the same effect in that regard as follows: "Well, (I told my son) that I was transferring those 250 shares to him and that while I had payments to make on those stocks that I had bought, the proceeds of whatever came from the shares would come to me until I was in a position, a financial position to have him keep the stock outright and enjoy all the privileges of it thereafter." Similar evidence was adduced with respect to the other 250 shares of stock which were transferred to the plaintiff. The evidence is therefore adequate to support the findings and judgment to the effect that the title to none of this stock or the proceeds therefrom passed to the plaintiff, but on the contrary that it was conveyed to him in trust to be held for the use and benefit of the defendant, and that there was therefore no consideration for the promissory note on which this action is based. The findings and judgment in this case are therefore adequately supported by the evidence.

We will now consider the appeal of Stuart F. Cooper from that part of the judgment which was rendered against him in the second above-entitled case. This is a suit on the part of Hattie May Cooper to quiet title to her undivided community interest in all of the stock and the proceeds therefrom which were involved in the first action. There is no dispute regarding the finding of the court in this suit that all of the stock in question is the community

property of the plaintiff and her husband Milton G. Cooper. Mrs. Cooper alleged and contends that the purported gifts of this stock to their son Stuart were in conflict with the inhibition of section 172 of the Civil Code, and therefore void. This suit was brought against the plaintiff's son, her husband and the corporation. A separate answer was filed by each defendant. The court adopted findings in exact accordance with those which were filed in the preceding case with respect to the 500 shares of stock which were transferred to Stuart F. Cooper on November 20, 1924, and on December 3, 1925, and the proceeds therefrom of cash and dividend stock subsequently delivered to him.

With respect to the 150 shares of stock transferred to the defendant Stuart F. Cooper on October 22, 1919, and the 100 shares transferred to him on December 26, 1922, and the proceeds therefrom, the court found that these shares were given to the son by his father with the knowledge and consent of this plaintiff and that her suit to quiet title thereto was therefore barred by the provisions of section 338 of the Code of Civil Procedure. A judgment was rendered accordingly.

None of the parties to this suit are questioning on appeal the last-mentioned findings of the court or the validity of the transfer to Stuart F. Cooper of the 250° shares of stock therein referred to. The finding that this action is barred by the statute of limitations with respect to these 250 shares of stock is not challenged on appeal. The title to that stock and the proceeds thereof should therefore be, and it is hereby, confirmed in Stuart F. Cooper, and the judgment is affirmed in its application thereto.

For the same reasons heretofore assigned in the first cause of action with relation to the 500 shares of stock which were transferred to Stuart F. Cooper by his father November 20, 1924, and on December 3, 1925, and the cash and dividend stock which he received as the proceeds thereof, we are satisfied the findings and judgment in this case that this property was transferred to the son and is held by him pursuant to the oral declaration of trust above referred to, are adequately supported by the evidence. It follows that the defendant Stuart F. Cooper is without any right, title or interest in this last-mentioned property, and he may therefore not complain of the judgment in this case which

quiets title to the community interest of the plaintiff in and to that property.

Both judgments are affirmed.

Pullen, P. J., and Plummer, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 14, 1935.